IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

CYNTHIA RICHTER et al., )
)
    Plaintiffs, )
) CIVIL ACTION NO.
v. ) 7:06-cv-1537-LSC
)
DOLGENCORP, INC., et al., )
)
    Defendants. )

MEMORANDUM OF OPINION

I. Introduction

Plaintiffs, who worked at different Dollar General Stores throughout the country as store managers, filed the above actions pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., claiming that they were wrongfully classified as exempt and thus improperly denied overtime compensation. Pending before this Court is the Motion to Decertify the Collective Action (Doc. 319) filed by Defendants Dolgencorp, Inc., Dolgencorp of New York, Dolgencorp of Texas, and Dollar General Partners, (collectively "Dollar General") as well as the responses thereto filed by Plaintiffs. After due consideration, the Motion will be granted.

II. Background

Dollar General owns and operates more than 10,000 retail stores in 39 U.S.

states. Dollar General's retail operations are divided into divisions, with each division subdivided into regions, which are further subdivided into districts. Each district contains several Dollar General stores, and each store operates under the direction and supervision of a store manager, who must report to a district manager.

On August 7, 2006, the complaint in this matter was filed as a collective action pursuant to 29 U.S.C. § 216(b), the FLSA's class action provision, by Cynthia Richter, a former Dollar General store manager, on behalf of herself and all similarly situated employees. This Court initially granted class status to Plaintiffs[1] on March 23, 2007, and simultaneously granted the motion to facilitate notice pursuant to section 216(b). (Doc. 79.)

Dollar General asserts in its present motion (Doc. 319), that the originally certified class is due to be decertified because the members of the class are not "similarly situated." Dollar General contends the evidence indicates dissimilar responsibilities and duties among the opt-in Plaintiffs and argues that it should not be forced to defend the current class action with and against representative evidence and testimony. Not surprisingly, Plaintiffs see the members of the present class as sufficiently similar in that they, for the most part, operate under a system of detailed

---

[1] Hereinafter, the opt-in class of plaintiffs will be referred to as the "opt-in Plaintiffs," and the collective group of all plaintiffs will be referred to as "Plaintiffs."

upper management control with little discretion. Plaintiffs assert that Dollar General has a blanket policy of denying overtime compensation to its store managers and forces all of its managers to spend substantially more than fifty percent of their time performing manual labor. (Doc. 325.)

III. Discussion

    A. The Certification Standard

Section 216(b) provides that "[a]n action . . . may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees *similarly situated*." (emphasis added.) Thus it is necessary, in order to maintain a collective action under the FLSA, for Plaintiffs to demonstrate that they are similarly situated. *Anderson v. Cagle's Inc.*, 488 F.3d 945, 952 (11th Cir. 2007).

There is no guidance in the FLSA for determining how similar a group of plaintiffs must be before a collective action may proceed, nor has the Eleventh Circuit precisely defined the term "similarly situated." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008). The Eleventh Circuit has, however, suggested a two-tiered approach to dealing with collective action certification and notice pursuant to § 216(b). *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001). When this Court addressed class certification "at the initial stage, [it] appl[ied] a 'fairly lenient standard' for determining whether the plaintiffs are truly similarly

situated." *Anderson*, 488 F.3d at 953. At that stage, "plaintiff[s] ha[d] the burden of showing a 'reasonable basis' for [their] claim that there [were] other similarly situated employees." *Morgan*, 551 F.3d at 1260–61.

At the current stage, "triggered by an employer's motion for decertification . . . [the standard is] . . . less lenient, and the plaintiff[s] bear[] a heavier burden." *Id.* at 1261. The Eleventh Circuit has "refused to draw bright lines in defining *similarly*, but explained that as more *legally significant differences* appear amongst the opt-ins, the less likely it is that the group of employees is similarly situated." *Id.* (emphasis added). The Eleventh Circuit has also observed that "the 'ultimate decision rests largely within the district court's discretion,' and . . . in order to overcome the defendant's evidence, a plaintiff must rely on more than just 'allegations and affidavits.'" *Morgan*, 551 F.3d at 1261 (quoting *Anderson*, 488 F.3d at 953). Further, "although the FLSA does not require potential class members to hold identical positions . . . , the similarities necessary to maintain a collective action under § 216(b) must extend 'beyond the mere facts of job duties and pay provisions.'" *Anderson*, 488 F.3d at 953 (citing *White v. Osmose, Inc.,* 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002)). To properly address the issue, this Court must consider several factors, such as: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[] [that] appear to be individual to each plaintiff; [and] (3) fairness and

procedural considerations." *Morgan*, 551 F.3d at 1261 (hereinafter, these three factors will be referred to as the "*Morgan* analysis").

The three factors of the *Morgan* analysis are not mutually exclusive—there is considerable overlap among them. Each factor directly influences the others. For example, the ability of Dollar General to assert its executive exemption defense depends on the experiences and job duties of each individual employee. Also, the more dissimilar Plaintiffs are and the more individuated Dollar General's executive exemption defense is, the greater doubts there are about the fairness of a ruling on the merits that is reached on the basis of purportedly representative evidence.

The executive exemption criteria set forth in the Department of Labor's regulations must be considered, as the executive exemption is a defense at issue in this case. The executive exemption, which applies to "any employee employed in a bona fide executive capacity," 29 U.S.C. § 213(a)(1), is an affirmative defense to the FLSA's requirement that employees be paid overtime hours at time and one-half the regular rate of pay. *Id.* § 207(a)(1); *Morgan*, 551 F.3d at 1265. Under the current regulations, "[t]o establish an employee is a bona fide executive, an employer must show: (1) the employee is '[c]ompensated on a salary basis at a rate of not less than $455 per week'; (2) the employee's 'primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or

subdivision thereof'; (3) the employee 'customarily and regularly directs the work of two or more other employees'; and (4) the employee 'has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.'" *Morgan*, 551 F.3d at 1266 (quoting 29 C.F.R. § 541.100(a)). Prior to this test for the executive exemption—effective August 23, 2004—there was no independent requirement that the employee have the authority to hire or fire other employees, or that the employee's recommendation be given particular weight. Instead, the "old regulations" "considered the selection of employees as a management task under the primary duty inquiry." *Morgan*, 551 F.3d at 1267 n.51.

Both parties agree that all Plaintiffs were compensated on a salary basis at the requisite rate under both regulations and all Plaintiffs customarily and regularly direct the work of two or more other employees; so, for the purposes of this opinion these two prongs are met as to each Plaintiff.[2] Therefore, the only elements where Plaintiffs must show substantial similarity are: (1) whether Plaintiffs' primary duty is management, and (2) whether Plaintiffs have the authority to hire or fire other employees or whether their suggestions and recommendations as to the hiring, firing, advancement, promotion, or

---

[2]Such a finding would benefit Dollar General on the overall issue of whether the executive exemption applies, but benefits Plaintiffs on the current issue of whether the opt-in Plaintiffs are "similarly situated" for purposes of section 216(b) certification.

any other change of status of other employees are given particular weight.

## B. Application of *Morgan* Analysis

### 1. Differences in Employment Experiences and Job Duties

In order to examine the first factor of the *Morgan* analysis, the extent to which Plaintiffs' relevant employment experiences and job duties as Dollar General employees were similar or disparate, a separate examination of both the "primary duty" and "authority to hire or fire" factors of the executive exemption test is necessary.

#### i. Primary Duty of Management

An employee's "primary duty" is "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphases on the character of the employee's job as a whole." *Id.* The current regulations note that "employees who spend more than [fifty] percent of their time performing exempt work will generally satisfy the primary duty requirement." *Id.* § 541.700(b). That is, they will generally be considered as exempt.

The current regulations list several non-exclusive factors to consider in determining the primary duty of an employee, including: (1) "the relative importance of the exempt duties as compared with other types of duties;" (2) "the amount of time

spent performing exempt work;" (3) "the employee's relative freedom from direct supervision;" and (4) "and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.* § 541.700(a). The old regulations included "the frequency with which the employee exercises discretionary powers." *Morgan*, 551 F.3d at 1268. The current regulations define "management" to include:

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

*Id.* § 541.102. In addition to these activities, the old regulations "considered the selection of employees as a management task under the primary duty inquiry." *Morgan*, 551 F.3d at 1267 n.51.

Plaintiffs first argue that all Plaintiffs have "submitted a declaration asserting that they spent the majority of their time performing nonmanagerial duties," and that "Dollar General has failed to highlight a single deposed plaintiff that did not spend the majority

of their time performing manual-labor duties." (Doc. 325 at 44–45.) It appears from the evidence submitted to the Court that a majority of the opt-ins who responded to discovery directed at the issue of their performance of "manual labor" may well have spent more than fifty percent of their time at work performing "manual labor" rather than "exempt work." (*Id. See* Doc. 317-23.) If that were all that need be considered, this Court's opinion addressing the motion to decertify the existing class would be much more concise. Regrettably, it is not. "Employees who do not spend more than [fifty] percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." 29 C.F.R. § 541.700(b). "In other words, an employee's performance of nonexempt work does not preclude the exemption if the employee's primary duty remains management." *Morgan*, 551 F.3d at 1268-69.

In addition, "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of [executive employee status] are otherwise met." *Id.* § 541.106(a). "Whether an employee meets the requirements of [executive employee status] when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in § 541.700." *Id.* In this case, several Plaintiffs have admitted to simultaneously performing exempt and nonexempt work. (Doc. 304-11 at 42; Doc. 307-14 at 46; Doc.

308-5 at 40; Doc. 310-16 at 42; Doc. 310-34 at 43; Doc. 311-10 at 51.)[3] Therefore, it would be impossible to determine whether Plaintiffs are "similarly situated" based solely on the fact that most, if not all of them, spent over fifty hours per week on nonexempt work. Rather, this Court must consider Plaintiffs individually, on a case by case basis, to see if they are truly "similarly situated."

Plaintiffs also argue that they are "substantially similar" with respect to their primary duty because the fourteen factors the district court found in *Morgan* demonstrating that the opt-in store managers were factually similar are all present in this case. (Doc. 325 at 21–22.)[4] The Eleventh Circuit in *Morgan* determined that the

---

[3] For the sake of brevity, this Court does not list each example of or citation to a named difference in Plaintiffs' circumstances. Those listed sufficiently demonstrate the substantial variations.

[4] Specifically, the district court in *Morgan* found that opt-in plaintiffs were similar in a number of respects, including:

> (1) their universal classification as store managers with the same job duties; (2) the small fraction of time they spent on managerial duties; (3) the large amount of time they spent on non-managerial duties such as stocking shelves, running the cash registers, unloading trucks, and performing janitorial work; (4) the restrictions on their power to manage stores as compared to the district manager's sweeping managerial discretion; (5) the amount of close district manager supervision of store managers; (6) the lack of managerial discretion that Family Dollar corporate policies afforded to store managers; (7) their day-to-day responsibilities; (8) their receiving base salaries regardless of the hours worked and no overtime pay; (9) their sharing certain managerial duties with hourly employees; (10) their maintaining production and sales records; (11) their inability to authorize pay raises; (12) their power to train subordinates; (13) their restricted authority to close stores in the event of emergencies; and (14) their inability to select outside vendors without district manager approval.

district court did not abuse its discretion when it determined that a § 216(b) class of plaintiffs was similarly situated based on several findings of similarity. However, in addition to the "ample evidence support[ing] the district cout's fact-findings," The Eleventh Circuit in *Morgan* also found "scant evidence to support [the] argument" that "the duties of store managers varied significantly depending on the store's size, sales volume, region, and district." *Morgan*, 551 F.3d at 1263. This case is different for two reasons.

First, in affirming the district court's decision, the Eleventh Circuit in *Morgan* was simply deciding that the district court had not abused its discretion by finding the multiple plaintiffs similarly situated. It does not necessarily follow that a contrary ruling would have been an abuse of the district court's discretion.

Second, there is not an abundance of evidence in this case showing that Plaintiffs are similarly situated. On the contrary, the other evidence tends to show substantial differences between the multiple Plaintiffs' job duties and the potential importance of those duties. For example, Plaintiffs differ in the amount of time spent performing exempt work—the second factor to be considered under the current regulations. Some Plaintiffs spent little time solely performing exempt managerial

---

*Morgan*, 551 F.3d at 1262-63.

duties. (Doc. 304-23 at 49; Doc. 305-14 at 48; Doc. 305-19 at 73; Doc. 305-27 at 36; Doc. 306-7 at 30; Doc. 306-12 at 66.) Others spent over a quarter of their time solely managing their store. (Doc. 306-2 at 41; Doc. 308-12 at 46-47; Doc. 311-5 at 24; Doc. 304-2 at 41; Doc. 304-25 at 63; Doc. 307-16 at 38; Doc. 310-7 at 57.)

Plaintiffs also differ in the amount of time concurrently performing exempt and nonexempt work. Many Plaintiffs were always performing managerial duties while concurrently performing manual labor. (Doc. 304-11 at 42; Doc. 307-14 at 46; Doc. 308-5 at 40; Doc. 310-16 at 42; Doc. 310-34 at 43; Doc. 311-10 at 51.) Others only sometimes performed managerial duties and manual labor concurrently. (Doc. 304-9 at 43; Doc. 306-10 at 51; Doc. 307-25 at 42; Doc. 308-7 at 21; Doc. 309-8 at 79–80; Doc. 309-13 at 50.) Some Plaintiffs could not perform manual labor and managerial duties concurrently at all. (Doc. 305-9 at 9–10;  Doc. 305-10 at 29–30; Doc. 306-11 at 49; Doc. 306-12 at 66; Doc. 306-30 at 42; Doc. 307-29 at 44; Doc. 308-28 at 34.)

In addition to the varying amounts of time Plaintiffs spent performing exempt work, the type of exempt work performed also differed among Plaintiffs. Some worked in large stores with more associates to manage and a larger stock room, while others work in smaller stores with less management needed and thus more time available to perform manual labor. (Doc. 304-4 at 47; Doc. 304-30 at 24–25; Doc. 305-9 at 26–28; Doc. 305-11 at 8; Doc. 306-12 at 41; Doc. 309-18 at 10.) A store's location may have

also contributed to differences among Plaintiffs. A store in a high-crime location required Plaintiffs to spend more time managing safety, securing the store, and protecting company assets (Doc. 305-28 at 29; Doc. 307-14 at 24; Doc. 307-29 at 31; Doc. 308-14 at 65; Doc. 308-26 at 8–9; Doc. 310-1 at 33–34), while a store in a high-income or highly competitive location required Plaintiffs to spend more time interviewing and training associates because of high turnover. (Doc. 307-11 at 21, 28; Doc. 307-21 at 24–25; Doc. 307-27 at 28; Doc. 309-22 at 21; Doc. 310-1 at 10, 33–34.)

Even if every Plaintiff spent a similar amount of time performing "management" duties as a whole, the relative importance of the different types of exempt work performed—the first factor to be considered under the current regulations—may also lead to differing "primary duty" determinations. Simply stated, while two separate employees may spend an equal amount of time performing exempt work, they may still be classified differently if one spent all this time training associates, while the other spent it managing safety, securing the store, and protecting company assets, provided the importance of one of these exempt duties is considered sufficiently greater than the importance of the other. Because of the differing amounts and wide variety of exempt work performed, if each Plaintiffs' claims were tried separately, the primary duty of some would no doubt be found to be management, while the primary duty of others would not. Thus, this factor in the *Morgan* analysis

tends to show that Plaintiffs are not similarly situated regarding their primary duty.

### ii. Authority to Hire or Fire or Recommendations given Particular Weight

Plaintiffs contend that the fourth requirement of the primary duty test—that the employee has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight—has "no impact on the Court's decertification decision." (Doc. 325 at 38.) According to Plaintiffs, the only employees who do not satisfy this element are "floaters"—those who "did not have a home store, but instead floated from store to store helping out." *Id.* at 32. Dollar General, on the other hand, argues that "[n]o reasonable jury can determine whether [o]pt-[i]n Plaintiffs had the authority to make or recommend employment decisions through representative testimony." (Doc. 319 at 44.) Under the old regulations, hiring and firing associates was regarded as a management function to be considered in the Court's primary duty analysis. Under the current regulations, the authority to hire or fire associates or whether recommendations were given particular weight is considered a separate element of the executive exemption test that must be satisfied. Either way, Plaintiffs must be similarly situated in order to avoid decertification.

In this case, Plaintiffs' authority to hire employees varied. Some hired associates

unilaterally, or their ability to hire varied depending on a variety of factors (Doc. 305-7 at 20–21; Doc. 311-12 at 6; Doc. 304-2 at 17; Doc. 305-15 at 25; Doc. 306-7 at 20; Doc. 310-17 at 17), while others had to have district manager input. (Doc. 305-17 at 29–30; Doc. 305-25 at 9; Doc. 306-29 at 19; Doc. 308-4 at 11; Doc. 308-5 at 12; Doc. 309-30 at 23–24.) In addition, while a few Plaintiffs occasionally terminated an associate without a district manager's approval (*see* Doc. 308-8 at 31; Doc. 310-27 at 8), many could make termination recommendations. (Doc. 305-28 at 8; Doc. 307-30 at 29; Doc. 304-27 at 13; Doc. 306-16 at 50; Doc. 304-10 at 30.)

Even though the authority vested in Plaintiffs to hire or fire associates differs among members of this class, the *Morgan* analysis may still favor a finding that the class is similarly situated if their recommendations were all given "particular weight." 29 C.F.R. § 541.100(a). The current regulations list several non-exclusive factors to consider in determining whether an employee's suggestions and recommendations are given "particular weight," including: (1) "whether it is part of the employee's job duties to make such suggestions and recommendations;" (2) "the frequency with which such suggestions and recommendations are made or requested;" and (3) "the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. The regulations go on to note that "[a]n employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level

manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." *Id.*

These factors tend to show dissimilarity among Plaintiffs regarding the weight their recommendations were given. For example, the frequency that each of them made recommendations varies, as does the frequency that those recommendations were relied upon. Many Plaintiffs' recommendations were always accepted. (Doc. 308-5 at 12; Doc. 305-28 at 8; Doc. 307-30 at 29; Doc. 310-5 at 37; Doc. 311-16 at 31; Doc. 307-11 at 32–33.) The recommendations of many others were only sometimes accepted. (Doc. 304-27 at 13; Doc. 306-16 at 50; Doc. 306-21 at 16, 34; Doc. 307-10 at 3–4, 13; Doc. 309-12 at 27; Doc. 309-16 at 22.) Finally, a few of them related that their recommendations were rarely or never accepted. (Doc. 304-10 at 30; Doc. 305-23 at 24; Doc. 306-8 at 19, 38, 42; Doc. 311-2 at 14; Doc. 305-10 at 21; Doc. 306-15 at 30.)

These differences in the frequency with which recommendations were made and accepted could ultimately lead to differing conclusions as to whether an employee's recommendations were given "particular weight." If each Plaintiffs' claims were tried separately, the recommendations of some would be found to be given particular weight, while the recommendations of others would not. Thus, this factor of the *Morgan* analysis tends to show that Plaintiffs are not similarly situated regarding their ability to hire or fire, or regarding the weight given to their recommendations.

### 2. Extent Dollar General can assert its executive exemption defense on a collective or individual basis

The Court now turns its attention to the second factor of the *Morgan* analysis, whether there are defenses individual to each Plaintiff. While "applying the executive exemption is 'an inherently fact-based inquiry' that depends on the many details of the particular job duties and actual work performed by the employee seeking overtime pay," this "does not preclude a collective action where plaintiffs share common job traits." *Morgan*, 551 F.3d at 1263 (quoting *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1263 (11th Cir. 2008)).

Plaintiffs argue that Dollar General "applied the executive exemption to all [P]laintiffs, regardless of store size, region, or sales volume" similar to the defendant in *Morgan*, which does not show that Dollar General's "defense was so individulized to render a collective action unwarranted or unmanageable." (Doc. 325 at 34, 35.) However, *Morgan* was not decided solely on the defendant's classification of its employees. Rather, "[g]iven the volume of evidence showing the [plaintiffs] were similarly situated, and the fact that [the defendant] applied the executive exemption across-the-board to every store manager–no matter the size, region, or sales volume of the store" the defendant did not show "clear error in the district court's finding that its defenses were not so individually tailored to each [p]laintiff as to make [the]

collective action unwarranted or unmanageable." *Morgan*, 551 F.3d at 1263. This case is different for two reasons.

First, as previously noted, the Eleventh Circuit in *Morgan* was only deciding whether the district court had abused its discretion by finding the multiple plaintiffs similarly situated. The Court of Appeals did not hold that a contrary finding given the same evidence would have been an abuse of discretion, and this Court is not bound by the district court's determination in *Morgan*.

Second, the evidence in this case tends to show substantial differences between the multiple Plaintiffs' job duties and the potential importance of those duties. (*See supra* Part III.B.1.i.) Unlike the employees in *Morgan*, some Plaintiffs in this case were given significant authority and autonomy to run their stores, while others could essentially be described as shelf-stockers. To make a ruling based on the representative testimony of some Plaintiffs—specifically those with less authority and autonomy to run their store—would be unfair to Dollar General.

While Dollar General applied its executive exemption across-the-board, the defense is individuated in this case as Plaintiffs' job duties and employment experiences vary dramatically. Although some may have performed uniform tasks mandated by a corporate manual, others routinely exercised their independent judgment and the amount of time they spent performing managerial duties is a matter

of individual inquiry. Furthermore, Dollar General may be able to apply the exemption to different Plaintiffs based on different circumstances. Even if every Plaintiff spent similar amounts of time performing exempt job duties as a whole, because they performed a wide array of differing exempt job duties with varying degrees of importance, one group of them cannot reasonably be said to be representative of them all. For these reasons, the second factor of the *Morgan* analysis tends to show that Plaintiffs are not similarly situated.

### 3. Fairness and Procedural Concerns

Finally, the Court turns to the third factor of the *Morgan* analysis, whether it would be just to collectively and finally adjudicate Plaintiffs' claims on the representative evidence before the Court. This determination is made in light of the purposes of FLSA class actions: "(1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct." *Morgan*, 551 F.3d at 1264.

A collective action in this case would certainly reduce the burden on Plaintiffs, as they would not be forced to adjudicate their respective claims in multiple different courts. Furthermore, "[t]here is nothing inherently unfair about collectively litigating an affirmative executive-exemption defense [if a court makes] well-supported and detailed findings with respect to similarity." *Morgan*, 551 F.3d at 1264. This Court,

however, is unable to make such findings here. While the executive-exemption defense is common among all Plaintiffs, there is an abundance of evidence concerning their differences. Because it is an extensively fact-based inquiry, these differences directly affect an assessment of the executive-exemption for each individual Plaintiff. It would be fundamentally unfair to Dollar General if the class were to remain certified. The efficiency gained by holding one trial as opposed to many cannot be obtained at the expense of Dollar General's due process rights.

VI. Conclusion.

For the reasons set forth above, Dollar General's Motion to Decertify the Collective Action is due to be granted. A separate order will be entered at a later date.

Done this 22nd day of October 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

171032